UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-35-RJC
3:18-cr-162-RJC-DSC-1

| | | |
|---|---|---|
| **DANIEL BOYD MCCRACKEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to

Vacate Sentence, (Doc. No. 1).

## I.    BACKGROUND

Petitioner was charged in the underlying criminal case with methamphetamine trafficking

conspiracy with "fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled

substance" attributable to, and reasonably foreseeable by Petitioner in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(A), 846 (Count One). (3:18-cr-162 ("CR") Doc. No. 16 at 1) (Bill of

Information); see (CR Doc. No. 20) (Waiver of Indictment). The Government filed an Information

pursuant to 21 U.S.C. § 851 setting forth multiple prior convictions for felony drug offenses. (CR

Doc. No. 19).

Petitioner pleaded guilty pursuant to a written Plea Agreement in exchange for charging

concessions. (CR Doc. No. 18 at ¶¶ 1, 2). Petitioner admitted that he is, in fact, guilty as charged

in Count One. (CR Doc. No. 18 at ¶ 1). Petitioner stipulated that the § 851 Information regarding

two or more prior felony drug convictions is accurate, and he agreed not to challenge the same.

1

(CR Doc. No. 18 at ¶ 5). Petitioner was facing "a statutory sentence of mandatory LIFE imprisonment" pursuant to the § 851 Information. (Id.). The Government agreed to withdraw the § 851 Information at sentencing if Petitioner complied with the Plea Agreement, which would result in a sentence of "no less than ten (10) years nor more than life imprisonment." (Id.).

The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (CR Doc. No. 18 at ¶ 7).

The parties agreed to jointly recommend the following findings and conclusions regarding the U.S. Sentencing Guidelines: "[t]he amount of methamphetamine 'ice' that was known to or reasonably foreseeable by Petitioner was at least 150 grams," but the parties reserved their rights to advocate a specific drug amount and base offense level; and Petitioner's plea is timely for purposes of acceptance of responsibility. (CR Doc. No 18 at ¶ 8). The parties remained free to argue their respective positions regarding specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, or adjustments to the offense level. (Id.).

The Petitioner stipulated the existence of a factual basis to support the guilty plea as set forth in the written Factual Basis, which he read and understood. (CR Doc. No. 18 at ¶ 15). He agreed that the Factual Basis may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence, unless the Factual Basis itself notes Petitioner explicitly reserved the right to object to a particular fact. (Id.).

2

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (CR Doc. No. 18 at ¶¶ 17-18). The Plea Agreement contains an express waiver of Petitioner's right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 18 at ¶¶ 19-20). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (CR Doc. No. 18 at ¶ 30).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

From at least as early as May 2017 through February 2018, **Defendant Daniel Boyd McCRACKEN was a member of a drug trafficking conspiracy involving 50 grams or more of methamphetamine (actual), a Schedule II controlled substance**.

On August 9, 2017, a cooperating defendant (CD) pleaded guilty to drug trafficking and firearms charges in this Federal district. The CD admitted to distributing methamphetamine with McCRACKEN. (The Defendant objects and reserves his right to contest the drug amounts described by the CD.)

On or about May 31, 2017, a Gaston County Police Department (GCPD) detective, along with a Lowell Police Department officer and other law enforcement personnel, were conducting surveillance at the residence of McCRACKEN's co-conspirator.... McCRACKEN was observed entering the residence … and leaving after approximately 30 minutes. Law enforcement conducted a traffic stop on his vehicle, which was a 2015 Kia Soul reported stolen out of Greenville County, South Carolina. The law enforcement officials also discovered that McCRACKEN had warrants for his arrest from Henderson County and Union County, North Carolina for unrelated offenses. Also, a female passenger admitted being in possession of hypodermic needles for her dogs. During a search of the vehicle, an officer found approximately **87 grams of suspected methamphetamine**, plastic baggies, $1513 in U.S. currency, digital scales, and jars containing suspected methamphetamine residue. Both McCRACKEN and the

3

female passenger were transported to the Gaston County Police Department to be processed.

Based on the evidence gathered during the surveillance operation on June 1st, a search warrant was issued and executed at the residence…. During the search, officers seized in excess of **90 grams of suspected methamphetamine**, drug paraphernalia, and approximately 10 firearms.

On February 24, 2018, CMPD received a call for service at the Charlotte Rental Car Deck at Charlotte Douglas International Airport. A CMPD officer met with an Enterprise Rental Car Manager who advised that there was a suspicious subject sitting in a rental car in the deck. The witness stated that this subject was acting suspicious and appeared to be "off." The CMPD officer approached the vehicle and spoke with the occupant, who identified himself as Daniel McCRACKEN. The officer had CMPD Communications run an NCIC warrant query which returned a wanted subject hit on McCRACKEN. McCRACKEN was taken into custody and during a search incident to arrest, CMPD officers found a Ziploc baggie containing approximately **28 grams of suspected methamphetamine** in McCRACKEN's possession. A subsequent search of McCRACKEN's backpack revealed two glass pipes and a can of butane fuel.

(CR Doc. No. 17 at 1-2) (paragraph numbers omitted; emphasis added).

On May 8, 2018, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 21) (Acceptance). Petitioner stated, under oath, that he is guilty of Count One and wanted the Court to accept his guilty plea. (CR Doc. No. 21 at 3-4). Petitioner confirmed that he received a copy of the Information and discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him. (CR Doc. No. 21 at 1-3). Petitioner also discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine his sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he will still be bound by the plea even if he receives a sentence more severe than he expects. (CR Doc. No. 21 at 2). Petitioner acknowledged the rights he was waiving by pleading guilty and stated his

understanding that the case would proceed directly to sentencing.  (CR Doc. No. 21 at 2-3).

The Plea Agreement was summarized in open court. (CR Doc. No. 21 at 3). Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. (Id.). Petitioner stated that he read the Factual Basis, understood it, and agreed with it. (Id.). Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement.  (Id.). Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. (Id.).

The Presentence Investigation Report's ("PSR") Statement of Relevant Conduct includes the facts from the Factual Basis.  (CR Doc. No. 26 at ¶¶ 6-10). The PSR further sets forth information establishing Petitioner's responsibility for between 5.5 and 11.9 kilograms of methamphetamine (actual), resulting in a base offense level of 38 and a two-level weapon enhancement:

> On March 9, 2017, Charlotte-Mecklenburg Police Department officers arrested an individual … in possession of 160 grams of 97% pure crystal methamphetamine and two firearms. … During a debriefing, [that individual] admitted to distributing far **in excess of 500 grams of methamphetamine** with McCRACKEN and stated the following: The methamphetamine seized on March 9th was from McCRACKEN; [the individual] had been sending U.S. currency with McCRACKEN, who would travel to Atlanta, Georgia to **purchase 4-5 ounces and later 6-7 ounces of methamphetamine 4-5 times per week for 3 months (totaling 5,376-11,760 grams)**. McCRACKEN would return to Gaston County and deliver the product to [the individual] at [the individual's] residence….

(CR Doc. No. 26 at ¶¶ 12, 13, 17) (emphasis added).

The PSR scored the base offense level as 38 because Petitioner was responsible for at least 4.5 kilograms of methamphetamine (actual) pursuant to U.S. Sentencing Guidelines § 2D1.1. (CR Doc. No. 26 at ¶ 22).  Two levels were added because a dangerous weapon was possessed pursuant

to § 2D1.1(b)(1). (CR Doc. No. 26 at ¶ 23). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. (CR Doc. No. 26 at ¶¶ 29-31). Petitioner had 16 criminal history points and two more points were added because he committed the instant offense while under a criminal justice sentence, resulting in a total of 18 criminal history points and a criminal history category of VI. (CR Doc. No. 26 at ¶¶ 72-74). The resulting advisory guidelines range was 360 months to life imprisonment followed by 10 years of supervised release. (CR Doc. No. 26 at ¶¶ 121, 128).

Defense counsel filed PSR objections addressing: the amount of methamphetamine for which Petitioner was responsible and the resulting base offense level; the two-level enhancement for possession of a firearm; and various challenges to Petitioner's criminal history.[1] (CR Doc. No. 25).

Petitioner wrote the Court a Letter, dated March 20, 2019, requesting the appointment of a new lawyer because he "wish[ed] to fire counsel, on ineffective assistance…." (CR Doc. No. 37). A Magistrate Judge held a hearing regarding the status of counsel on April 8, 2019, and appointed new counsel. (CR Doc. No. 54).

Petitioner wrote a second Letter, dated August 25, 2019, expressing dissatisfaction with his new lawyer. (CR Doc. No. 39). A hearing came before a Magistrate Judge on September 30, 2019, at which point counsel explained that he and Petitioner had met several times and are "completely on the same page now." (CR Doc. No. 55 at 2). Petitioner agreed that he was "satisfied for Mr. White to represent [him] moving forward now…." (CR Doc. No. 55 at 3). Accordingly, no action was taken on the Letter. (Id.).

---

[1] The Final PSR removed 16 criminal history entries to which Petitioner had objected. (CR Doc. No. 26 at 40).

Ahead of the sentencing hearing, the parties entered Joint Sentencing Stipulations signed by the prosecutor, defense attorney, and Petitioner. (CR Doc. No. 45). The parties agreed that: the amount of methamphetamine known to or reasonably foreseeable by Petitioner was more than 1,500 grams but less than 5,000 grams, resulting in a base offense level of 32; Petitioner should not receive a 2-level weapon enhancement; and Petitioner agreed to withdraw his objection to the criminal history score and category in PSR paragraphs 57 and 61.[2] (CR Doc. No. 45). The Joint Sentencing Stipulations anticipated an advisory guideline range of "151-188 months (level 29/category VI)." (Id.).

A sentencing hearing came before the Court on January 21, 2020. Petitioner agreed that he read the PSR, understood it, and had enough time to review it with his lawyer. (CR Doc. No. 56 at 3). Defense counsel withdrew the remaining PSR objections in light of the parties' Joint Sentencing Stipulations. (CR Doc. No. 56 at 3-4). The Court accepted the Stipulations and found that the resulting advisory guideline range was between 151 and 188 months' imprisonment. (CR Doc. No. 56 at 5). The Petitioner expressed his remorse and "submit[ted] to [the Court's] justice." (CR Doc. No. 56 at 13-16). The Court sentenced Petitioner within that range to 162 months' imprisonment followed by five years of supervised release in a Judgment entered on February 7, 2020. (CR Doc. No. 47). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate on January 22, 2021.[3] (Doc. No. 1). He appears to argue that counsel was ineffective for (restated and renumbered): (1) providing misadvice that rendered the guilty plea involuntary; (2) manipulating Petitioner into keeping new

---

[2] These are two unscored prior convictions.

[3] Petitioner does not receive the benefit of the prisoner mailbox rule because he failed to certify the date upon which he placed the Motion to Vacate in the prison's mail system. See Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

7

counsel on the case by promising to move to withdraw his guilty plea; (3) failing to object to the PSR; and (4) failing to file a direct appeal. Petitioner "admits his guilt," and asks the Court to set aside the sentence and resentence him with a reasonable base offense level and accurate criminal history category. (Doc. No. 1 at 23-24).

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION[4]

### (A)    Waiver

As a preliminary matter, "a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims

---

[4] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim contained in the lengthy and somewhat repetitive Motion to Vacate, which is not specifically addressed in this Order, has been considered and rejected.

8

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Petitioner stated at the Rule 11 hearing that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. See (CR Doc. No. 21). He stated that the guilty plea was freely and voluntarily entered and was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. (Id.). He acknowledged that he was guilty of Count One, and understood and agreed with the Factual Basis. (CR Doc. No. 44 at 12). He further agreed that he had discussed any possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 44 at 12-13). The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991).

Petitioner's knowing and voluntary guilty plea waived any allegations of ineffective assistance of counsel that preceded it.[5] Therefore, to the extent that the Petitioner suggests that counsel provided ineffective assistance before he pleaded guilty, these claims are dismissed and denied.

**(B)      Ineffective Assistance of Counsel**

---

[5] Petitioner's argument that ineffective assistance of counsel rendered his guilty plea involuntary will be discussed in section (B)(1), *infra*.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### (1) Involuntary Plea

Construing the Motion to Vacate liberally, Petitioner appears to suggest that his guilty plea was involuntary because counsel: failed to explain the difference between "ice" and methamphetamine; failed to investigate the substance's weight and purity; and threatened that, if Petitioner did not accept the plea deal, the prosecutor would call a witness to "put 45[6] or more

---

[6] This appears to refer to the 4.5 kilograms of methamphetamine for which Petitioner was held responsible in the PSR, which resulted in a base offense level of 38. See (CR Doc. No. 26 at ¶ 22).

kilos on [him] and give [him] a level 38, 360 months to life." (Doc. No. 1 at 22-23).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters her plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Petitioner's arguments that he did not understand the significance of "ice," the amount for which he was being held responsible, and the resulting sentencing consequences are conclusively refuted by the record. The Bill of Information identifies the substance at issue as "fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance…," and cites 21 U.S.C. § 841(b)(1)(A). (CR Doc. No. 16). The Plea Agreement provides that the substance was "methamphetamine 'ice;'" the amount known to or reasonably foreseeable by Petitioner was at least 150 grams; and Petitioner's sentencing exposure was mandatory life imprisonment with the § 851 enhancement, and a minimum of 10 years' imprisonment and a maximum of life without the § 851 enhancement. (CR Doc. No. 18 at ¶¶ 5, 8). Petitioner stated under oath during the Rule

11

11 hearing that he understood the charge, the Plea Agreement, and the consequences of his plea including his sentencing exposure. He agreed more than a year and eight months later, in the Joint Sentencing Stipulations, that the amount of methamphetamine known to or reasonably foreseeable by him was more than 1,500 grams but less than 5,000 grams, with a base offense level of 32 and an advisory guideline range of between 151 and 188 months' imprisonment. (CR Doc. No. 45). His present self-serving contentions that he did not understand the significance of "ice," the amount for which he was being held responsible, or its sentencing consequences, are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Next, the Petitioner suggests that counsel coerced him to plead guilty by threatening that, if the case went to trial, the Government would present evidence of a 45-kilogram drug amount resulting in a sentence between 360 months and life imprisonment. This advice actually understated the statutory life sentence that Petitioner would have faced at trial had the Government not withdrawn the § 851 Information and presented its strong evidence of Petitioner's guilt as set forth in the Factual Basis and PSR. Therefore, to the extent that counsel provided such advice to Petitioner, it was not coercive.

Moreover, Petitioner has not attempted to demonstrate prejudice. He does not allege that he would not have pleaded guilty but for counsel's alleged misadvice. See Hill, 474 U.S. at 59. This is illustrated by the relief Petitioner is seeking in this action, i.e., resentencing rather than the

12

withdrawal of his guilty plea. (Doc. No. 1 at 24). Nor would it have been rational for Petitioner to proceed to trial because the Government had strong evidence of Petitioner's guilt, and the Plea Agreement was highly beneficial and resulted in the dismissal of the § 851 Information.

Accordingly, Petitioner's suggestion that ineffective assistance of counsel rendered his guilty plea involuntary is rejected.

### (2) Substitution of Counsel/Plea Withdrawal

Next, Petitioner argues that his new lawyer manipulated Petitioner into keeping him on the case by promising to move to withdraw the guilty plea, which counsel failed to do.

These claims are conclusively refuted by the record. Petitioner stated at the September 30 hearing on the status of counsel that he had resolved his issues with counsel and was comfortable proceeding with counsel's representation. (CR Doc. No. 55). Petitioner demonstrated his continued satisfaction with counsel, as well as a desire to adhere to the guilty plea, by entering into Joint Sentencing Stipulations more than three months later on January 17, 2020. (CR Doc. No. 45). When the Petitioner addressed the Court at sentencing on January 21, 2020, he expressed remorse and "submit[ted] to [the Court's] justice." (CR Doc. No. 56 at 13-16). He did not mention any dissatisfaction with counsel or desire to withdraw the guilty plea. His present self-serving and unsupported contentions that he remained dissatisfied with counsel and wanted to withdraw his guilty plea are therefore rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, Petitioner has failed to establish prejudice because he has failed to demonstrate a reasonable probability that the Court would have granted him substitute counsel, or allowed him to withdraw his guilty plea, but for counsel's allegedly deficient performance. The substitution or withdrawal of counsel is discretionary and requires consideration of factors including whether a conflict between the attorney and client amounts to a breakdown in communication so great that

13

it prevents an adequate defense. See United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994); United States v. Smith, 640 F.3d 580, 588 (4th Cir. 2011). Although Petitioner complains generally about counsel in his August 25 Letter, nothing in the Letter, the hearing transcript, or anything else in the criminal case or the instant proceeding demonstrates that there was a breakdown of communication such that it prevented counsel from representing Petitioner adequately. Accordingly, there is no reasonable probability that the Court would have allowed counsel to withdraw and appointed substitute counsel had Petitioner not withdrawn his request for substitute counsel.

Nor has the Petitioner stated any basis whatsoever for withdrawing his guilty plea. A motion to withdraw a guilty plea is discretionary where a defendant "can show a fair and just reason for requesting the withdrawal." See Fed. R. Crim. P. 11(d)(2)(B); United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000) (there is no "absolute right" to withdraw a guilty plea, and a district court has discretion to decide whether "fair and just" reasons exist); United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc) (holding that an appropriately conducted Rule 11 hearing raises a strong presumption that the plea is final and binding, and articulating a non-exhaustive list of factors in considering a motion to withdraw). Petitioner has not come forward with any "fair and just" reasons to support the withdrawal of his plea nor are any apparent in the record. He has thus failed to demonstrate a reasonable probability that the Court would have allowed him to withdraw the plea had counsel raised the issue.

The Petitioner has failed to demonstrate any deficient performance by counsel or that, but for counsel's deficiency, there was a reasonable probability of a different outcome. Accordingly, Petitioner's claims with regards to the substitution of counsel and withdrawal of his guilty plea are rejected.

**(3) Sentencing**

Next, Petitioner contends that counsel was ineffective for failing to challenge the PSR's drug amount and criminal history calculation. He contends that, had counsel performed effectively, he would have had an offense level of 25 and criminal history category of IV, resulting in an advisory guideline range of between 70 and 84 months' imprisonment.[7]

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Petitioner waived this claim to the extent that he entered into the Joint Sentencing Stipulations that agreed to: a drug amount of more than 1,500 grams but less than 5,000 grams; an anticipated base offense level of 32, offense level of 29, criminal history category of VI; and an anticipated advisory guideline range of between 151 and 188 months' imprisonment. (CR Doc. No. 45). Counsel cannot be deemed ineffective for failing to raise objections that would have contradicted the Stipulations that Petitioner signed and agreed to in attempting to mitigate the length of his sentence. See (CR Doc. No. 45 at 1 Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law"); Fleischer v. United States, 2021 WL 2517378, at *6 (W.D.N.C. June 18, 2021) (counsel cannot be deemed ineffective for failing to present arguments and evidence that would conflict with the knowing and voluntary guilty plea, plea agreement, and factual basis).

In any event, the Petitioner cannot demonstrate prejudice because the objections are

---

[7] The Court disagrees with the Government's characterization of these allegations as claims of substantive guideline calculation errors rather than ineffective assistance of counsel, and thus declines to address its procedural default argument.

meritless. They will be addressed in turn.

With regards to drug quantity, Petitioner argues that there is no factual basis to support the 1.5 to 5 kilogram drug amount in the PSR's offense conduct section. See (Doc. No. 1 at 21) (challenging PSR ¶ 8). He contends that the actual weight in the case was 106 grams, and the offense level should have been 25.

As previously discussed, Petitioner admitted in the Plea Agreement that he was responsible for at least 150 grams of "ice," and he further admitted in the Joint Sentencing Stipulations that the amount of methamphetamine that was known to or reasonably foreseeable by him was "more than one thousand five hundred (1,500) grams but less than five thousand (5,000) grams, resulting in a base offense level of 32…." (CR Doc. No 18 at ¶ 8); (CR Doc. No. 45 at ¶ 2). These admissions excused counsel from challenging the methamphetamine's purity and precluded counsel from arguing that a lesser amount was attributable to Petitioner. See Lockhart, 506 U.S. at 374; Fleischer, 2021 WL 2517378, at *6.

Petitioner also argues that counsel should have objected to a number of the PSR paragraphs scoring him criminal history points. First, the Petitioner argues that the prior convictions in PSR paragraphs 63,[8] 64,[9] and 66,[10] each of which was scored with three criminal history points, are all "part of the same case, a concurrent state conviction, [and] plea agreement" and were all sentenced

---

[8] In Spartanburg County, SC case numbers 2015-GS-42-2233, 15-GS-42-2232, and 2015-GS-42-2231, Petitioner pleaded guilty to: manufacture methamphetamine; disposal or assisting disposal of methamphetamine waste; and distribute, sell, manufacture or possession with intent to distribute a controlled substance near a school. The offenses occurred on November 5, 2014. Petitioner was sentenced to 3 years' imprisonment, concurrent, on October 28, 2015.

[9] In Spartanburg County, SC case number 15-GS-42-5011, Petitioner pleaded guilty to attempt to purchase more than nine grams of pseudoephedrine in a 30-day period. The offense occurred on March 28, 2015. Petitioner was sentenced to 30 months' imprisonment on October 28, 2015.

[10] In Spartanburg County, SC case number 15-GS-42-5010, Petitioner pleaded guilty to financial identity fraud. The offense occurred on June 9, 2015. Petitioner was sentenced to 3 years' imprisonment, concurrent, on October 28, 2015.

on October 28, 2015. He thus argues that they should have been scored a total of three criminal history points, rather than nine, "even though there were intervening arrest[s]…." (Doc. No. 1 at 13).

The PSR reflects that the offenses scored in paragraphs 63, 64, and 66 were indeed all sentenced on October 28, 2015. However, the offenses occurred on different dates, Petitioner admits they were separated by intervening arrests, and each of the sentences exceeded one year and one month imprisonment. Therefore, each of these paragraphs was appropriately scored with three criminal history points. U.S.S.G. § 4A1.1(a) (2016) (three points are added for each prior sentence of imprisonment exceeding one year and one month); U.S.S.G. § 4A1.2(a)(2) (2016) ("Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest…."). These paragraphs therefore totaled nine criminal history points and counsel was not ineffective for failing to object.

Second, Petitioner contends that paragraph 70[11] should not have received one criminal history point, or a two-point enhancement for committing the instant offense while under a criminal justice sentence. He contends that he was arrested on the federal charge on May 29, 2017 and, upon his release on bond, he was taken to Union County where he was sentenced to 30 months' probation for the offense in paragraph 70. He argues that "[the Union County sentence] stemmed from a conviction post-arrest for [the] current [federal] offense [and he] would not have had a conviction during the instant offense." (Doc. No. 1 at 20).

The record reflects that the offenses occurred in different counties, on different dates, and

---

[11] Petitioner was convicted in Union County NC case number 17CRS52254-1 for obtaining property by false pretense. That is, on or about May 5, 2017, Petitioner attempted to obtain $83.06 from Belk, Inc. by attempting to return clothing he had taken off the shelf and had not purchased. Petitioner was sentenced on December 11, 2017 to 6 to 17 months' imprisonment, suspended, and 30 months of supervised probation.

involved completely separate conduct. Petitioner has failed to come forward with any evidence demonstrating that they were related in any way. Accordingly, paragraph 70 was properly assessed a criminal history point. See U.S.S.G. § 4A1.1(c). The two-level enhancement was also properly applied because he "committed any part" of the federal conspiracy -- which occurred as early as 2017 to in or about February 2018 -- while he was "under … probation …" for the offense in paragraph 70. See U.S.S.G. § 4A1.1(d), App. Note 4.

Petitioner's objections to paragraphs 65 and 67 are less clear. Petitioner contends that paragraph 65[12] should have been scored, at most, one criminal history point rather than two because: it is a concurrent sentence that was imposed while Petitioner was already in the South Carolina Department of Corrections, and did not affect his "max out" date; it is an uncounseled misdemeanor; and it is an alternative sentence of 30 days' imprisonment or a $1,000 fine was imposed. (Doc. No. 1 at 19). As to paragraph 67,[13] he argues that that sentence is an "other disposition" that should not have been scored, rather than receiving one criminal history point. He argues that he only should have been sentenced to time served,[14] which he appears to assert was 10 days, however, he remained incarcerated longer than that because of court holiday closures. He also appears to assert that an alternative sentence was imposed in that case. See U.S.S.G. § 4A1.2, App. Note 4 (a sentence which specifies a fine or other non-incarcerative disposition as an alternative to a term of imprisonment is treated as a non-imprisonment sentence). In support of

---

[12] Petitioner was convicted in Greeneville County SC case numbers 2015A2320500425, 2015A2320500426, and 2015A2320500427 for three counts of petty larceny for which he was sentenced on December 9, 2015 to 30 days' imprisonment each, consecutive.

[13] In Pickens County, SC case number 17-GS-39-1345, Petitioner pleaded guilty to possession of a Schedule II controlled substance, hydrocodone. The offense occurred on March 29, 2017 and Petitioner was sentenced on January 24, 2018 to 37 days' imprisonment.

[14] Confusingly, the Petitioner asserts that his time served was 10 days' imprisonment, but that "this convict could have been no more than one night in jail had court been in session." (Doc. No.1 at 16).

18

this argument, Petitioner has filed the sentence sheet in case number 2017-GS-39-1345, which appears to indicate that the offense is punishable by "0-6 mos &/or $1k," but that the sentence actually imposed was "CTS" of 37 days' imprisonment. (Doc. No. 1 at 18).

Petitioner has failed to satisfy his burden of demonstrating that reasonable counsel would have raised these PSR challenges. Even if he were able to do so, he has failed to establish prejudice. Petitioner scored a total of 18 criminal history points and a criminal history category of VI. The objections to paragraphs 65 and 67, if successful, would have resulted in only a two-level reduction in Petitioner's criminal history points, resulting in a total of 16 rather than 18. A category of VI applies where an offender has 13 or more criminal history points. Therefore, even if counsel had successfully objected to paragraphs 65 and 67, this would not have altered Petitioner's criminal history category or guideline range whatsoever.

Accordingly, Petitioner's claims that counsel was ineffective for failing to raise these PSR objections will be dismissed and denied.

**(4) Notice of Appeal**

Construing the Motion to Vacate liberally, Petitioner appears to suggest that counsel was ineffective for failing to file a notice of appeal.

Counsel must file a notice of appeal when instructed to do so by the client. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if the client does not expressly request an appeal, counsel must consult with the client about an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal); or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Although not determinative, a highly relevant factor is whether the conviction follows a trial or a guilty plea because a plea reduces the scope of potentially appealable

issues and may indicate that the defendant seeks to end the judicial proceedings. Id. A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed a timely appeal "'but for' counsel's failure to file or consult." Gordon v. Braxton, 780 F.3d 196, 200 (4th Cir. 2015) (quoting Flores-Ortega, 528 U.S. at 484). A defendant's showing that there are nonfrivolous grounds to appeal may give weight to the contention that he would have appealed had counsel adequately consulted with him, however, a defendant is not required to demonstrate that his appeal has merit. Flores-Ortega, 528 U.S. at 485-86.

Petitioner asserts with regards to the 1.5 to 5 kilogram drug amount that counsel told him that "we would fight on direct appeal" but that counsel "has never … filed [an appeal] on [his] behalf." (Doc. No. 1 at 21). Assuming that the Petitioner intended to assert that counsel was ineffective for failing to file a notice of appeal, no relief is warranted.[15]

Petitioner suggests that he and counsel discussed appealing at some point but he fails to allege that he expressly instructed counsel to file a notice of appeal on his behalf. Petitioner does, however, assert that he reasonably demonstrated to counsel that he was interested in appealing which gave rise to a duty to consult. Petitioner has failed to demonstrating prejudice in that he does not allege that he would have appealed but for counsel's alleged deficiency. Therefore, to the extent that Petitioner contends that counsel was ineffective for failing to file a notice of appeal on his behalf, this claim is dismissed and denied.

## IV.    CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and

---

[15] Petitioner also argues that "[c]ounsel for the defendant failed to follow up with defendant, and no appeal was filed." (Doc. No. 1 at 5-6, 8-9). This argument explains why Petitioner failed to raise his claims on direct appeal and does not appear to assert a claim of ineffective assistance of counsel. In any event, this argument would fail for the same reasons discussed *infra*.

denied.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3.    The Clerk is instructed to close this case.

Signed: October 27, 2021

Robert J. Conrad, Jr.
United States District Judge

21